UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

TRUSTEES OF THE OPERATIVE             :
PLASTERERS' AND CEMENT MASONS'   :
INTERNATIONAL ASSOCIATION LOCAL 262 :
WELFARE FUND, *et al.*,

                    Plaintiffs,         :

                                    :

  -v.-                             :

EMERALD DRYWALL FINISHING CORP.,     :

                    Defendant.     :
-------------------------------------------------------------X

**REPORT & RECOMMENDATION**

14-CV-4631 (JGK) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Judge John G. Koeltl, United States District Judge:**

        On February 9, 2015, the Court granted the motion of plaintiffs Cement Masons'

International Association Local 262 (the "Union") and the Trustees of the Operative Plasterers'

and Cement Masons' International Association Local 262 Welfare Fund, Annuity Fund, Pension

Fund, and Apprenticeship Training Fund (the "Funds") (together "Plaintiffs") for a default

judgment against defendant Emerald Drywall Finishing Corp. ("Emerald"). (Dkt. No. 24). The

Court thereafter referred the matter for an inquest into damages. (Dkt. No. 25). For the reasons

stated below, I recommend that the Court enter judgment for Plaintiffs against Emerald in the

amount of $64,434.79.

## I.    BACKGROUND

        Plaintiffs bring this action under Sections 502(a)(3) and 515 of the Employee Retirement

Income Security Act of 1974 (codified as amended at 29 U.S.C. § 1132) ("ERISA") and Section

301 of the Labor-Management Relations Act of 1947 (codified as amended at 29 U.S.C. § 185)

(the "Taft-Hartley Act"). Complaint ("Compl.") ¶ 1 (Dkt. No. 1). The Union is a labor

organization under Section 301 of the Taft-Hartley Act. *Id.* ¶ 8. The Funds are employee benefit

plans as defined in ERISA, 29 U.S.C. §§ 1002(1)-(3), 1132(d)(1). *Id.* ¶ 5.

      The Funds provide fringe benefits to eligible employees, retirees, and their dependents,

on whose behalf Emerald contributes to the Funds pursuant to a collective bargaining agreement

(the "CBA") between Emerald and the Union. *Id.* ¶ 6; Affidavit of Carmen Barrasso dated

March 10, 2015 ("Barrasso Aff.") ¶ 2 (Dkt. No. 27-2). The CBA obligates Emerald to (1) submit

contribution reports setting forth the hours that each employee worked and the amount of fringe

benefit contributions due pursuant to agreed rate schedules, and (2) remit such fringe benefits

contributions pursuant to the CBA. Compl. ¶ 12.

      A certified audit of Emerald's books and records revealed that, for the period of October

1, 2011 through May 31, 2013, Emerald failed to remit to Plaintiffs $44,347.29 in fringe benefit

contributions and $4,273.73 in union dues. Affidavit of Adam Novick dated March 9, 2015

("Novick Aff") ¶ 1 & Ex. A (Dkt. No. 27-3). Accordingly, on June 24, 2014, Plaintiffs filed suit

against Emerald alleging, among other things, that Emerald's failure to make these payments

constituted violations of ERISA, the Taft-Hartley Act, and the CBA. Compl. ¶¶ 15, 20, 27;

Barrasso Aff. ¶ 5.

      On February 9, 2015, the Court granted Plaintiffs' motion for a default judgment against

Emerald and referred the case to me to conduct an inquest into damages. (Dkt. Nos. 24, 25). On

March 11, 2015, Plaintiffs filed Findings of Fact and Conclusions of Law in Support of Damages

("Findings of Fact and Conclusions of Law") (Dkt. No. 27), a Memorandum of Law in Support

of Damages (Dkt. No. 27-1), Affidavits of Carmen Barrasso (Dkt. No. 27-2), the Fund

Administrator, and Adam Novick (Dkt. No. 27-3), the accountant who performed the audit, and

an Attorney's Fees and Costs Affirmation of Danielle Carney, Esq. ("Carney Aff.") (Dkt. No. 27-4).  The deadline for Emerald to respond passed without response on April 1, 2015.  *See* Order dated February 11, 2015.  (Dkt. No. 26).

Plaintiffs seek damages in the total amount of $64,434.79, consisting of (1) $44,347.29 for unpaid fringe benefit contributions; (2) interest on the unpaid contributions in the amount of $804.31; (3) $8,869.46 in liquidated damages; (4) $4,273.73 for unpaid union dues; (5) $2,100.00 in attorney's fees; (6) $540.00 in court costs; and (7) $3,500.00 in accountant fees. Findings of Fact and Conclusions of Law ¶ 7.

## II.    DISCUSSION

### A.    Legal Standard

Since the district court previously entered a default judgment in this case, the only remaining issue is the amount of damages owed to Plaintiffs.  In light of Emerald's default, Plaintiffs' allegations in the complaint, with the exception of those relating to damages, are accepted as true.  *See, e.g., Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).  However, Emerald's default is not considered an admission of damages, meaning Plaintiffs must still establish their entitlement to recovery and thus must substantiate their claims with evidence to prove the extent of damages.  *See Bricklayers and Allied Craftsworkers*, 779 F.3d at 189 (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

Although the Court may hold a hearing to assess those damages, a hearing is not required where a sufficient basis on which to make a calculation exists.  *See* Fed. R. Civ. P. 55(b)(2); *see*

3

*also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993). Indeed, the Second Circuit

has approved the holding of an inquest by affidavit, without an in-person court hearing, as long

the Court ensures that there was a basis for the damages specified in the default judgment. *See*

*Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund,*

*Education and Training Fund and Other Funds v. Metro Found. Contractors, Inc.*, 699 F.3d 230,

234 (2d Cir. 2012) (citing *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir.

1991)). "Magistrate judges and district courts have interpreted this to mean that, even when the

defendant defaults and is not present to object, damages must be based on admissible evidence."

*House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, at *1 (2d Cir. 2010) (summary

order) (citations omitted). As Plaintiffs' submissions provide a sufficient basis on which to make

calculations, no hearing is required, and I will rely on the affidavits Plaintiffs have submitted in

determining the reasonableness of the damages requested. *See Tamarin*, 13 F.3d at 54.

**B.    Damages Under ERISA**

As a general matter, ERISA requires employers to make contributions to multi-employer

plans in accordance with governing agreements such as the CBA, 29 U.S.C. § 1145, and

authorizes a civil action in federal district court by fiduciaries of a complaining pension fund,

29 U.S.C. § 1132. Regarding damages, Section 1132(g)(2) provides that in an action

> by a fiduciary for or on behalf of a plan . . . in which a judgment in favor of the
> plan is awarded, the court shall award the plan—(A) the unpaid contributions, (B)
> interest on the unpaid contributions, (C) an amount equal to the greater of—
> (i) interest on the unpaid contributions, or (ii) liquidated damages provided for
> under the plan in an amount not in excess of 20 percent . . . of the amount
> determined by the court under subparagraph (A), (D) reasonable attorney's fees
> and costs of the action, to be paid by the defendant, and (E) such other legal or
> equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be
> determined by using the rate provided under the plan, or, if none, the rate
> prescribed under section 6621 of Title 26.

4

29 U.S.C. § 1132(g)(2).  Following these statutory provisions, we now consider each category of

damages that Plaintiffs have sought in their application to the Court.

### 1.    Unpaid Fringe Benefit Contributions

Plaintiffs have submitted an audit report that establishes the amount of unpaid fringe

benefit contributions as $44,347.29.  Novick Aff. ¶ 1 & Ex. A, at 1.  This audit report constitutes

sufficient proof of these damages.  *See, e.g.*, *Alston v. Northstar La Guardia LLC*, No. 10-CV-

3611 (LAK) (GWG), 2010 WL 3432307, at *3 (S.D.N.Y. Sept. 2, 2010), *adopted*, No. 10-CV-

3611 (Dkt. No. 12) (S.D.N.Y. Sept. 30, 2010); *New York City Dist. Council of Carpenters v.

Rock-It Contracting*, No. 09-CV-9479 (JGK) (AJP), 2010 WL 1140720, at *2 (S.D.N.Y. Mar.

26, 2010), *adopted*, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010).  Accordingly, Plaintiffs should

be awarded $44,347.29 for unpaid fringe benefit contributions.

### 2.    Interest on Unpaid Fringe Benefit Contributions

Under ERISA, Plaintiffs are also entitled to interest on these unpaid fringe benefit

contributions.  *See* 29 U.S.C. § 1132(g)(2)(B) (stating that interest should be determined using

the rate provided under the plan).  Under Article VII, Section 8 of the CBA, when the employer

is a corporation, as Emerald is here, *see* Compl. ¶ 10, interest on unpaid contributions accrues at

a rate of ten percent (10%) per annum or at the maximum legal rate, whichever is greater.

Barrasso Aff., Ex. C.  Notwithstanding this provision of the CBA, Plaintiffs' auditor, "[a]t the

request of the Trustees," calculated interest at a rate of "0.17 plus 2%" (or 2.17%) and applied it

to the amount of unpaid contributions to arrive at a total of $804.31.[1]  Novick Aff. ¶ 4 & Ex. A,

---

[1] This rate (2.17%) is neither the maximum corporate rate for underpayments during the
delinquency period, which was 3%, *see Table of Underpayment Rates*, U.S. Dep't of Labor,
Employee Benefits Security Administration, *available at*
http://www.dol.gov/ebsa/calculator/interestratetables.html (last visited July 30, 2015), nor the
greater interest rate of 10%, to which Plaintiffs are entitled under the CBA and which they pled

at 1; Barrasso Aff. ¶ 5.  Accordingly, consistent with that calculation, Plaintiffs should be awarded $804.31 in interest, the amount they have requested.

### 3.    Liquidated Damages

ERISA also entitles Plaintiffs to recover liquidated damages pursuant to the CBA in an amount not to exceed twenty percent (20%) of the amount owed.  29 U.S.C. § 1132(g)(2)(C).  Here, pursuant to the terms of the CBA, Plaintiffs seek 20% of the unpaid contributions, or $8,869.46.  Findings of Fact and Conclusions of Law ¶ 7; Barrasso Aff. ¶ 5 & Ex. C.[2]  Accordingly, Plaintiffs should be awarded $8,869.46 in liquidated damages.

### 4.    Attorney's Fees and Costs

Finally, ERISA entitles Plaintiffs to reasonable attorney's fees and costs.  29 U.S.C. § 1132(g)(2)(D); *see also Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d. Cir. 2004).  Although "[t]here is no precise rule or formula for making [attorney's fee award] determinations," *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983), in the Second Circuit, reasonable attorney's fee awards are calculated using the standard of the "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *see also Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).  In determining the presumptively reasonable fee calculation, district courts should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Simmons*, 575 F.3d at 172 (quoting *Arbor Hill*, 522 F.3d at 117-18).  These variables include the *Johnson* factors and that a "reasonable, paying client wishes to spend the minimum necessary to

in the complaint ¶ 16.  It is not clear from the record why Plaintiffs are seeking interest at a lower rate than that to which they are entitled.

[2] The Findings of Fact erroneously list the amount as $8,869.40, not $8,869.46.

6

litigate the case effectively."[3] *Arbor Hill*, 522 F.3d at 190. Additionally, "[a]ccording to the

forum rule, courts 'should generally use the hourly rates employed in the district in which the

reviewing court sits in calculating the presumptively reasonable fee.'" *Simmons*, 575 F.3d at 174

(quoting *Arbor Hill*, 493 F.3d at 119).

    "[T]he fee applicant bears the burden of establishing entitlement to an award and

documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

Moreover, applications for an award of fees must be documented by time records that are

contemporaneously created and that specify, for each attorney, the date, the hours expended, and

the nature of the work done. *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (citations

omitted). "[C]ounsel . . . [are] not required to record in great detail how each minute of [their]

time was expended," but "counsel should identify the general subject matter of [their] time

expenditures." *Hensley*, 461 U.S. at 437 n.12.

    The contemporaneous billing records provided demonstrate that Ms. Carney spent eight

hours on this case billing at a rate of $200.00 per hour, for a total of $1,600.00. Carney Aff. ¶ 5

& Ex. A. Counsel also prepared a demand letter at a cost of $500.00, bringing the total

attorney's fees to $2,100.00. *Id.* The time expended by counsel was reasonable, and her hourly

rate is commensurate with the rates charged in this District. *See, e.g.*, *Sheehan v. Metropolitan*

*Life Insurance Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (finding rate of $300.00 per hour

---

[3] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989).

for associate at comparable firm to be reasonable).  Therefore, Plaintiffs should be awarded $2,100.00 in attorney's fees.

Plaintiffs also seek litigation costs in the amount of $540.00.  In support of their request, Plaintiffs provide two billing statements establishing the cost of $190.00 for service of process. In addition, Plaintiffs seek to recoup the $350.00 fee for filing the complaint.  These costs are reasonable and are specifically recoverable under 29 U.S.C. § 1132(g)(2)(D).  *See Alston*, 2010 WL 3432307, at *4 (awarding $430.00 in costs in ERISA action to recover unpaid fringe benefit contributions after default judgment); *New York City Dist. Council of Carpenters Pension Fund v. Quantum Constr.*, No. 06-CV-13150 (GEL) (JCF), 2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) (awarding $2,505.50 in costs in similar action after default judgment).  Accordingly, Plaintiffs should be awarded the full amount of costs at $540.00.

## C.    Damages Under the CBA and the Taft-Hartley Act

Plaintiffs also seek damages that, they contend, are recoverable under the CBA and Section 301 of the Taft-Hartley Act.  Specifically, they seek (1) $4,273.73 in unpaid union dues and (2) $3,500.00 in audit costs.

### 1.    Unpaid Union Dues

Under the terms of the CBA, plaintiffs are entitled to union dues.  Under Article VII, Section 1(c), the employer must deduct union dues from workers who so request in writing as follows:

> (i)    five percent (5%) working dues from the weekly gross wages (excluding fringe benefits) for apprentices;
> (ii)   five percent (5%) working dues for journeypersons and forepersons; and
> (iii)  one percent (1%) of wages and fringe benefits for International working dues shall be deducted from the employees' gross pay and a separate check should be issued to the Plasterers' Local 262 General Fund.

Barrasso Aff., Ex. A, at 14-15.  Because Article VII, Section 1(c) of the CBA provides for the

8

deduction of union dues by Emerald and falls within the same Article as the Section 8 provision on damages in the event of the employer's default, those damages provisions apply with equal force to union dues as they would to unpaid fringe benefits. *See id.* at 13-14, 19; *see, e.g.*, *Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers Local Union No. 12A v. Trade Winds Environmental*, No. 09-CV-1771 (RJH) (JLC), 2010 WL 8020302, at *6-7 (S.D.N.Y. Dec. 23, 2010) (awarding unpaid union dues under comparable CBA because plaintiffs affirmed that "the longstanding practice under the CBA has been to apply Article [VII, Section 8(h)] damages provisions to the delinquent payments of *both* fringe benefits and unpaid union dues-checkoffs") (internal quotation marks omitted), *adopted as modified*, 2011 WL 5843757 (S.D.N.Y. Nov. 18, 2011); *Bricklayers District Council Welfare Fund v. Loretoni*, No. 90-CV-3991 (RPP), 1991 WL 120318, at *2 (S.D.N.Y. June 24, 1991) (awarding unpaid union dues in similar action); *Cement Masons' Local 780 Trust Fund, Pension Fund, Annuity Fund, Vacation Fund, Apprenticeship Fund, Labor Management Trust Fund, and Other Funds v. Integrated Structures Corp.*, No. 11-CV-4161 (SJ) (RER), 2012 WL 4472256, at *6 (E.D.N.Y. Aug. 24, 2012), *adopted*, 2012 WL 4472250 (E.D.N.Y. Sept. 26, 2012) (same).

Plaintiffs' entitlement to union dues is supported by evidence from the audit, which reports the total amount of delinquent dues to be $4,273.73. Novick Aff. ¶ 1 & Ex. A (adding delinquent working dues at 5% ($3,191.86) to the delinquent 1% for international working dues ($1,081.87) to reach a total of $4,273.73); *see Mason Tenders v. Taher Contracting Co.*, No. 02-CV-9227 (RLC) (RLE), 2005 WL 2654372, at *2 (S.D.N.Y. Oct. 13, 2005) (awarding damages for unpaid union dues where plaintiffs' CBA entitled them to dues and plaintiffs substantiated amount with audit report). Thus, Plaintiffs should be awarded $4,273.73 for unpaid union dues.

9

2.    **Accountant Fees**

Finally, Plaintiffs seek to recover audit costs in the form of accountant fees of $3,500.00

under Article VII, Section 8 of the CBA.  Findings of Fact and Conclusions of Law ¶ 7.

Plaintiffs are entitled to an award of audit costs under ERISA and the CBA.[4]  Article VII,

Section 1(b)(v) of the CBA gives the Trustees of the Funds "authority to retain an accountant or

accounting firm to perform payroll audits of the Employer to determine whether the correct

amount of contributions have been made."  "'Requests for audit costs are generally determined

by utilizing the same standards the court applies in awarding attorneys' fees . . . [and thus] must

include, at minimum, some breakdown of the auditors' rates charged and hours expended.'"

*Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers Local Union No. 12A*, 2010 WL

8020302, at *7 (quoting *Trs. of Plumbers Local Union No. 1 Welfare Fund v. William J.*

*Kennedy Plumbing, Inc.*, No. 08-CV-3939 (CBA) (SMG), 2010 WL 1265197, at *3 (E.D.N.Y.

Feb. 18, 2010), *adopted*, 2010 WL 1269770 (E.D.N.Y. Apr. 2, 2010)).  Plaintiffs' audit costs are

substantiated by the affidavit and contemporaneous billing records of Adam Novick, an

accountant at Wagner & Zwerman, LLP, demonstrating that he performed 50 hours of work at

the rate of $70.00 per hour, for a total of $3,500.00 in accountant's fees.  Novick Aff. ¶ 3.  These

fees are reasonable and recoverable.  *See, e.g.*, *Mason Tenders Dist. Council v. Aurash Constr.*

*Corp.*, No. 05-CV-1891 (RCC), 2006 WL 647884, at *4 (S.D.N.Y. Mar. 15, 2006) (awarding

$9,450.00 in audit costs); *Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local*

*Union No. 12A*, 2011 WL 5843757, at *1 (awarding $2,596.00 in audit costs).  Therefore,

---

[4]  Under 29 U.S.C. § 1132(g)(2)(E) of ERISA, a court may award "such other legal or equitable
relief as [it] deems appropriate."  Some courts in this District have awarded audit costs under
this provision.  *See, e.g.*, *New York Dist. Council of Carpenters Pension Fund v. Perimeter*
*Interiors, Inc.*, 657 F. Supp. 2d 410, 425 (S.D.N.Y. 2009) (citing *Mason Tenders Dist. Council*
*v. Aurash Constr. Corp.*, No. 05-CV-1891 (RCC), 2006 WL 647884, at *4 (S.D.N.Y. Mar. 15,
2006)).

Plaintiffs should also be awarded $3,500.00 in accountant fees.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs should be awarded (1) $44,347.29 in unpaid fringe benefit contributions; (2) $804.31 in interest; (3) $8,869.46 in liquidated damages; (4) $4,273.73 in unpaid union dues; (5) $2,100.00 in attorney's fees; (6) $540.00 in court costs; and (7) $3,500.00 in accountant fees for a total of $64,434.79.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Koeltl.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: New York, New York
      July 31, 2015

JAMES L. COTT
United States Magistrate Judge

11